FORD MOTOR COMPANY, a corporation of the State of Delaware,
Plaintiff,

v.

The HACKART CONSTRUCTION COMPANY, Inc., a corporation of the State of New York, et al., Defendants.

Civ. A. 169–55.

United States District Court
D. New Jersey.

June 27, 1956.

Lynch, Lora & Milstein, by George R. Milstein, Jersey City, N. J., Benjamin Gross, Jersey City, N. J., of counsel, for plaintiff.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., by George H. Barlow, Asst. U. S. Atty., Trenton, N. J., for intervenor, United States.

FORMAN, Chief Judge.

This interpleader action was begun by a complaint filed February 18, 1955, in which the United States was named a party defendant. The suit arose in the following fashion:

The defendant Hackart Construction Company, as general contractor, agreed with the plaintiff, the Ford Motor Company, to perform construction work at the site of the plaintiff's plant at Metuchen, New Jersey. Subsequently, the plaintiff found itself confronted with many claims to money which it owed Hackart and which totaled far in excess of the amount Hackart had yet to be paid.

This suit in interpleader was then brought naming as defendants the Hackart Company, many laborers and materialmen who had claims against Hackart, the State of New Jersey and the United States. The plaintiff was permitted to interplead. The United States then moved that the complaint be dismissed as to it on the ground that it had not con-

sented to be made a defendant and the motion was granted. Subsequently, the United States filed its complaint in intervention asking that its tax liens upon property of Hackart Construction Company be declared paramount to all other claims to the fund and that they be foreclosed.

It was determined that the claim of the United States under its federal tax lien was paramount to all other claims asserted to the fund and it was ordered that the entire fund be paid over to the United States. At this time plaintiff's counsel asked that a counsel fee be granted to them out of the fund. The United States opposes the allowance of counsel fee on the ground that to allow it out of this fund would be to allow counsel fees against the United States without its consent, contrary to the express provision of 28 U.S.C. § 2412(a), and on the further ground that the tax lien raises the rights of the United States even higher than the traditional rights of an innocent stakeholder to such counsel fees.

The almost exclusive reliance of plaintiff's counsel is upon Judge Clary's decision in United States v. Ullman, D.C.E.D. Pa.1953, 115 F.Supp. 211,[1] in which he allowed counsel fees to an interpleading stakeholder despite the claim of the United States that to do so would be contrary to 28 U.S.C. § 2412(a). Although the government claim involved in the Ullman case arose out of a tax lien, since that lien had not been foreclosed nor its priority established at the time the counsel fees were allowed Judge Clary did not, because he could not, discuss the relative priority of a paramount government lien and a claim for counsel fees out of the fund in interpleader. Thus, Judge Clary's decision concerning counsel fees, coming as it did before the question of priorities of interest in the fund had been reached, did not purport to resolve a conflict between a government lien and an allowance of fees. This is made clear by his statement of the issue involved:

"The simple legal question to be determined in these two actions is, therefore, whether an award of counsel fees and costs may be granted in an interpleader action to a disinterested third party stakeholder who interpleads the United States and other claimants to a fund." 115 F.Supp. at page 214.

The argument that the government's lien, if paramount, defeats even the inherent equity power of the court to allow counsel fees seems not to have been either advanced or considered in the Ullman case.

█ Counsel fees to the plaintiff in this case are foreclosed by the decision of the United States Supreme Court in United States v. Liverpool & London & Globe Ins. Co., 1955, 348 U.S. 215, 75 S. Ct. 247, 99 L.Ed. 268. In that case suit was brought in a Texas state court against an insured who was owed the proceeds of a fire insurance policy by the Liverpool & London & Globe Insurance Company. The fund in the hands of the insurer was garnished by the plaintiff and the insurer moved in the state court to have the United States added as a party defendant because the United States had also asserted a claim to the fund held by it. The motion to add the United States was granted. Thereafter the United States removed the suit to the United States District Court for the Northern District of Texas. Further facts may be taken from the opinion of the Court of Appeals for the Fifth Circuit, 209 F.2d 684, 686–687:

"Subsequently, and upon the ground that it had not consented to be made a party defendant the Government moved that the action against it be dismissed and that it be allowed to intervene as a party plaintiff for the purpose of seeking foreclosure of its lien. This motion was granted and the United States filed its petition in intervention * * * claiming first and prior

1. Mention is also made of the case of United States v. Thorn, U.S.T.C. Par. 9405, D.C.Pa.1954, decided upon the reasoning in the Ullman case.

tax liens under Section 3670 et seq. of Title 26, U.S.C., on any and all property and rights to property belonging to the taxpayers. The appellee insurance company filed responsive pleadings in which it tendered its loss draft in the sum of $7,500.39 into the registry of the court and prayed for an order directing the clerk to receive and collect this draft and place the proceeds in the registry of the court and that Adams and his wife [the insureds], the United States, and the appellee furniture company [the garnishor] be required to interplead * * *. It further prayed for a discharge from any other * * * liability and for a reasonable attorney's fee in the sum of $500.00. * * *

"The District Court made fact findings * * *. The court was further of opinion that there was no contest between the appellee insurance company and any other parties to the cause and concluded that the insurer was entitled to a reasonable attorney's fee. * * *"

The facts in this case are substantially similar to those outlined in the opinion quoted from above. In both cases there was a stakeholder who was confronted with claims of creditors of the owner of the fund and with lien claims of the United States for taxes. In both the fund was insufficient to satisfy the total amount of the claims and in both were presented substantial questions of priority to the fund among the several claimants.

The District Court allowed the Liverpool & London & Globe Insurance Company a counsel fee upon the authority of Rule 677, Vernon's Texas Rules of Civil Procedure. This court is asked to award the fee in the exercise of its inherent equity power to do so in interpleader cases. See Globe Indemnity Co. v. Puget Sound Co., 2 Cir., 1946, 154 F.2d 249, 250, and cases cited. This difference is seized upon by counsel for the plaintiff, but I am of the opinion that it is a difference without significance for the reasons stated below.

The award of counsel fees under the Texas rule by the district court was affirmed by the Court of Appeals for the Fifth Circuit, 209 F.2d 684, as was its determination that the garnishment lien was superior to the federal tax lien. The Supreme Court, however, reversed on the merits, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268, and also voided the allowance of counsel fees saying:

"If the garnishment lien is not prior to the Government liens, and we have held that it is not, certainly fees allowed in that proceeding are not prior to the Government liens, and the authorization of the payment of the attorney's fees prior to the Government liens was error. * * *" 348 U.S. at page 217, 75 S.Ct. at page 248.

The determination of the Supreme Court on the facts of the Liverpool & London case that counsel fees could not be allowed is controlling here. It is not significant that the source of power used by the lower courts in that case to justify their allowance was a Texas rule while here it is inherent equity authority plaintiff asks this court to exercise. None of the three opinions in the Liverpool case (the district court's opinion is reported as Sunnyland Wholesale Furniture Co. v. Liverpool & London & Globe Ins. Co., 107 F.Supp. 405) questions the validity of the application of the Texas rule in the federal court. That rule was treated throughout that case as a competent source of power for the allowance of counsel fees in the ordinary case just as is the equity power of this court ordinarily a valid source of power to be utilized for that purpose. But in the Liverpool case and in this one these usual prerogatives of the court must fall before the primacy of the federal tax lien. A superior source of power forbids the allowance of counsel fees here. The Supreme Court held in the Liverpool case that property subject to a valid and paramount federal tax lien cannot be invaded

even for the allowance of counsel fees to an innocent stakeholder, and this court must obey that ruling.

Plaintiff argues elaborately that overruling by implication is not looked upon with favor. Hence, it contends the Liverpool case may not be construed as having overruled the Ullman case, for it does not mention it. In any event, as has been shown, the Ullman case is not analogous to this case because there was no contest between the claim for fees and the lien claim of the United States and it dealt with situations wherein the stakeholder only came forward with the stake, deposited it with the court and requested payment of its counsel fee and expenses. There was no show of resistance on the stakeholder's part to any claimant to the fund. Fees proportionate with this pro forma labor were allowed.[2]

Moreover, the plaintiff is not sufficiently disinterested in the distribution of the fund to qualify for a fee. Some of the many defendants have filed counterclaims against the plaintiff alleging an express agreement by the plaintiff to pay in full the amount due under the construction contract in consideration for continuance of performance under the contract by the defendants after Hackart's default. If the allegations of these counterclaims are correct and the plaintiff is liable for the amounts due the defendants for their full performance on the project distribution of the fund to the defendants rather than to the government would substantially reduce the potential liability of the plaintiff under the agreements alleged in the counterclaims.[3] It is true that plaintiff's attorney specifically postponed his application for fees from the conventional time of the filing

of the complaint until the determination of the claim of the United States, but he is not helped thereby.

The motion for counsel fees and costs will be denied and an appropriate order should be submitted to that effect by the United States Attorney, consented to as to form only, by counsel for the plaintiff, or noticed for settlement.

---

2. Two complaints were consolidated for consideration and $1,000 was allowed to cover fees and costs for each.

3. This potential liability under the counterclaims was undoubtedly the motivating reason behind the plaintiff's appearance in opposition to the government's motion to foreclose its lien and pay the fund over to it. This has caused the plaintiff the expenditure of considerably more energy

than that usually incurred by a stakeholder who merely wants to get its money safely paid into court and then retire from the scene. This also accounts for the unusually high fee demanded by the plaintiff—$6,000—which the court approved as reasonable while reserving decision as to its allowability. It is peculiarly appropriate that the plaintiff should bear the expense of the resistance rather than the fund.