78 N.J. Super. 28 (1963)
187 A.2d 367
ANNA SMITH, PLAINTIFF,
v.
ALFRED JOHN SMITH, ETC., ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 11, 1963.
*30 Mr. Sol D. Kapelsohn for plaintiff (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys).
Mr. David M. Satz, Jr., United States Attorney for United States of America (Mr. Robert D. Carroll, Asst. United States Attorney appearing).
PASHMAN, J.S.C.
This was a suit by plaintiff Anna Smith to quiet title to certain premises and for a partition thereof. A consent judgment for sale was entered on June 28, 1962, the sale was held on August 9, 1962, and an order confirming sale was entered on August 28, 1962. The sale price was $4,000; after deduction of commissions and fees, a total of $3,675.53 was deposited with the court subject to a determination as to the relative priorities among various claimants against that portion of the proceeds (50%, or $1,837.77) which represents the share of defendant Alfred Smith.
The claims against these proceeds are as follows: (1) the law firm of Kapelsohn, Lerner, Leuchter & Reitman, one half of the total counsel fee allowed, if any, for the conduct of the litigation, (2) Abraham Kapelsohn, as assignee of a judgment against Alfred Smith, docketed on October 4, 1955  this judgment in the amount of $602.40, with interest computed at 6% from October 4, 1955 to October 4, 1962, totals $855.41, (3) plaintiff Anna Smith for $805.23, one half of the monies paid by her to the Howard Savings Institution, as adjudicated by the entry of a divorce judgment nisi entered in her favor on January 13, 1961, (4) plaintiff Anna Smith for $162.69, one half of monies paid by her to the Howard Savings Institution subsequent to the judgment nisi (before final judgment) which paid off the balance of a mortgage against the premises. (I should note that there is *31 a dispute about this sum, based upon a contention by the United States of America, that only those payments totaling $100.19 made by plaintiff subsequent to the entry of a final judgment of divorce should be considered; one half of this is $50.10. The United States concedes that this latter amount is a prior lien.); (5) plaintiff Anna Smith for $122.75, one half of the amount paid by her to the City of Jersey City for real estate taxes after the mortgage was paid; (6) plaintiff Anna Smith for $265, one half of the monies paid by her for necessary repairs to the premises since the date of her defendant husband's desertion as adjudicated by the judgment nisi, and (7) the United States of America for federal tax liens upon the premises which were assessed against defendant Alfred Smith and recorded in the office of the County Clerk of Hudson County. This last item consists of three liens: the first entered on March 18, 1958 in the sum of $1,127.10; the second entered on June 3, 1958 in the sum of $875.78; and the third entered on November 24, 1959 in the sum of $894.45 which, concededly, includes the second lien of $875.78. The total which the United States claims as a lien against the proceeds, subject only to the $50.10 figure under item 4 above, is $2,021.55.
The facts have been stipulated. The sole questions remaining are the priorities to be accorded the seven items hereinbefore mentioned.
On January 13, 1962 and April 14, 1962, a judgment nisi and final judgment, respectively, were entered in plaintiff's favor in a divorce proceeding instituted by said plaintiff against defendant Alfred Smith on the ground of desertion. Incident to a determination of priorities is the resolution of the question of the point of time at which plaintiff and defendant Alfred Smith, owners of the premises as tenants by the entirety, became owners as tenants in common.
In Eberle v. Somonek, 24 N.J. Super. 366 (Ch. Div. 1953), affirmed per curiam 27 N.J. Super. 279 (App. Div. 1953), the lower court said, at page 374:
*32 "So long as the marriage existed between defendant and his former wife, they continued to hold an estate by the entireties and such an estate is not subject to partition. * * * But a final decree of divorce dissolving the marriage between a man and his wife will * * * operate to convert an estate held by them as tenants by the entirety to a tenancy in common. Buttlar v. Buttlar, 67 N.J. Eq. 136 (Ch. 1904); Baker v. Kennerup, 102 N.J. Eq. 367 (Ch. 1928)." (Emphasis added.)
In this case the judgment nisi did not terminate the marriage since it is only a conditional judgment of divorce. Not until final judgment was entered on April 14, 1962 did the plaintiff and defendant Alfred Smith become tenants in common; prior to that time the marital status remained. See, e.g., Dacunzo v. Edgye, 33 N.J. Super. 504 (App. Div. 1955), affirmed 19 N.J. 443, 449 (1955).
The Government has conceded, under the authority of Weh v. Weh, 63 N.J. Super. 238 (Ch. Div. 1960), that the plaintiff is entitled to priority over the United States in the sum of $50.10 which represents one-half the amount paid by her to reduce and satisfy the mortgage indebtedness subsequent to April 14, 1962 (final judgment of divorce).
In Weh Judge Mintz held that a divorced wife was entitled to subrogation for one half of payments made on her account subsequent to the final divorce. No determination was made as to payments made by her prior to that time. The court did state that in determining whether the divorced wife was entitled to be subrogated to the lien of the prior mortgage, the criterion to be applied is what "`will best serve the purposes of justice and the actual and just intention of the party.' Kinkead v. Ryan, 65 N.J. Eq. 726, 728 (E. & A. 1903)." Weh v. Weh, supra, at p. 244. Judge Mintz found that the obvious intent of the plaintiff in Weh was to obtain contribution and subrogation.
The first determination to be made is the priority between the federal lien and the (a) mortgage payments ($805.23) made by plaintiff prior to entry of the final divorce judgment, as adjudicated by the judgment nisi; (b) real property taxes ($122.75) paid by plaintiff subsequent to the satisfaction of *33 the mortgage; and (c) payments made by plaintiff for maintenance and repairs ($265.00), as adjudicated by the judgment nisi. Plaintiff claims that a wife who discharges a mortgage lien and pays taxes on, and necessary repair costs for, mutually owned property prior to a divorce, has a right of contribution from her husband although the parties are not living together. Her right to contribution is unquestioned. Ross v. Ross, 35 N.J. Super. 242 (Ch. Div. 1955). The question is whether she has priority over the United States' lien from this "fund" in court.
Admittedly, plaintiff was personally obligated to make these mortgage payments, she being a principal obligor on the bond and mortgage. The competing rationales herein involved  the obligation of plaintiff to pay against the benefit bestowed on defendant Alfred Smith and plaintiff's equitable right to subrogation  call for the application of an equitable determination. Although the decision in Weh is, I repeat, of no independent significance because it made no holding as to pre-divorce payments of the mortgage indebtedness, the rationale of that case is peculiarly applicable to the case sub judice. Although plaintiff was obligated to make the mortgage payments, by doing so she preserved the property from loss, prevented foreclosure, and, indeed, made possible this "fund" in court. Conceding the fact that plaintiff was preserving her own property as a tenant by the entirety, she in no sense can be presumed to have intended a gift to her husband in view of his desertion. Any love or marital affection which might, under different circumstances, support a presumption of gift by the wife to her husband, is completely negated by this fact. See Ross v. Ross, supra; Michalski v. Michalski, 20 N.J. Super. 258, 263 (Ch. Div. 1952); Van Inwegen v. Van Inwegen, 4 N.J. 46, 51-52 (1950). It may be observed further that "[t]he interest of a wife in an estate by entireties is her separate property which she may hold free of her husband's debts." Carlisle v. Parker, 8 W.W. Harr. 83, 38 Del. 83, 188 A. 67, 71 (Super. Ct. 1936). The inexorable conclusion to be drawn, as in Weh, is that plaintiff *34 made these mortgage payments with the intention of obtaining contribution and subrogation. It would be inequitable to permit the plaintiff's mortgage payments to be subordinated to the Government's personal tax lien against defendant under the circumstances heretofore presented. I conclude, therefore, that plaintiff is entitled to priority over the Government to one half of the monies paid to Howard Savings Institution as adjudicated by the judgment nisi.
The payment by plaintiff of one half of the real estate taxes ($122.75) after the mortgage obligation was fulfilled is also entitled to priority over the federal tax lien for the same reasons that the mortgage payments are so entitled. It is true that had plaintiff not paid these taxes a municipal tax lien would have been subordinate to the federal tax lien. However, this is merely hypothetical and of no import since the fact remains that plaintiff did pay the real estate taxes and no municipal tax lien ever arose.
One half of the money expended by plaintiff for necessary repairs ($265) stands on a different footing from the mortgage and tax payments. As to this item, I find that the plaintiff's claim is subordinate to the Government's lien. While the decision in Baird v. Moore, 50 N.J. Super. 156 (App. Div. 1958), severely curtailed the prior holding in Polombo v. Polombo, 48 N.J. Super. 13 (Ch. Div. 1957), as to the right to a credit for payments made on account of necessary repairs by a cotenant in exclusive possession, it does not override the Government's priority under the circumstances of this case. The mortgage and the tax payments were fixed as to amount, and plaintiff was obligated to pay them. However, the question of expenditure for repairs to the premises rested in the discretion of the plaintiff. I recognize that a failure to repair may have been a breach of a covenant in the mortgage. But the extent and amount of repairs necessary to preserve the premises were not fixed. A determination as to what expenditures were to be made, and in what amount, was certainly equivocal and subject to discussion. In this respect the money expended on repairs differs *35 from the mortgage and tax payments. It must also be noted that plaintiff was in sole possession of the property when she made these payments. The expenditures were of exclusive benefit to her comfort and convenience in the enjoyment of the property.
As to the priority between the government lien and the assignee of the October 4, 1955 judgment ($602.40), I find that the Government is entitled to priority. The federal tax lien was perfected, in the federal sense, when filed in the County Clerk's office in March 1958. At that time the state court judgment was not perfected by levy and execution and is, therefore, inchoate in the federal sense and inferior. I believe that a reading of the United States Supreme Court cases cited by the Government compels this finding. The "first in time is the first in right" doctrine, enunciated in United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), is not the first and last word on the subject. Subsequent decisions have demonstrated that to enjoy priority over a federal tax lien, a competing lien must be "choate" in the federal sense. This means, at least, that the competing lien must have attached to specific property. United States v. Bond, 279 F.2d 837 (4 Cir. 1960), cert. denied 364 U.S. 895, 81 S.Ct. 220, 5 L.Ed.2d 189 (1960), and cases cited therein. This determination is reinforced by the clear import of our own state decisions which hold that a junior creditor who first levies upon the property of the debtor is accorded priority over a senior creditor who has not levied. Swift & Co. v. First Nat. Bank of Hightstown, 114 N.J. Eq. 417 (Ch. 1933); Vineland Savings & Loan Assn. v. Felmey, 12 N.J. Super. 384 (Ch. Div. 1950).
Plaintiff's attorney has entered a claim against the proceeds for a counsel fee (one half of the amount to be allowed). There can be no doubt that the proceeds of the partition represent a fund in court within the purview of R.R. 4:55-7(b). See Katz v. Farber, 4 N.J. 333 (1950); Baird v. Moore, supra, 50 N.J. Super., at p. 176; Lipin v. Ziff, *36 53 N.J. Super. 443, 445 (Ch. Div. 1959). That such a counsel fee, if allowed, would be prior to the payment of the federal tax lien was answered in the affirmative in Farley v. Manning, 4 N.J. 571 (1950), and reiterated very recently in Washington Const. Co. v. United States of America, 75 N.J. Super. 536 (Ch. Div. 1962). These two latter decisions involved interpleader actions where there was an "innocent stakeholder." This distinction should be noted for the record, since I am of the opinion that it does not foreclose an allowance of counsel fees in this case. The rationale of our Supreme Court's decision in Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162 (1960), applies to all requests for counsel fees from a "fund" in court. Simply stated, "allowances are payable from a `fund' when it would be unfair to saddle the full cost upon the litigant for the reason that the litigant is doing more than merely advancing his own interests." Sunset Beach Amusement Corp. v. Belk, supra, at p. 168. The basic criterion is not whether more than the plaintiff's interests were advanced; rather it is whether the suit was for the purpose of advancing those interests. I am of the opinion that the nature and purpose of this partition was to advance more than the sole interest of the plaintiff, and counsel is, therefore, entitled to a reasonable allowance out of the fund. That the United States "happens to be a party to the litigation," and its recovery will be limited to that extent, is of no special moment. See Washington Const. Co. v. United States of America, supra, 75 N.J. Super., at p. 540. Therefore, counsel is entitled to a counsel fee, one half of which is chargeable against the present "fund." Counsel should submit an affidavit as to his services and the amount to which he is entitled will be entered in the order.
To recapitulate, the order of priority shall be:
(1) Counsel fee to plaintiff's attorney;
(2) Payment of $50.10 to plaintiff for one half of payments made by her to the Howard Savings Institution subsequent to the final judgment of divorce to satisfy the mortgage indebtedness;
*37 (3) Payment of $805.23 to plaintiff for one half of payments made by her to the Howard Savings Institution as adjudicated by the entry of a judgment nisi entered in her favor on January 13, 1961;
(4) Payment of $122.75 to plaintiff for one half of payments made to the City of Jersey City for real estate taxes after the mortgage was paid;
(5) Payment of $2,021.55 to the United States of America in satisfaction of its tax liens against defendant Alfred Smith.
Since these five items more than deplete the available proceeds, the subsequent priorities are rendered moot and need not be set forth. The $2,021.55 payment to the United States of America will be reduced by the total of the payments made under priorities 1 through 4.
Counsel for plaintiff will submit an affidavit per my request; thereafter a judgment may be submitted, consented to as to form or settled on notice.